## Borg v. Commercial Lumber Co.

*Joseph H. Goldstein,* for claimant.
*Jamieson & Glassman,* for defendant.

WADE, P. J., November 3, 1942.—Claimant was first employed by defendant on or about December 28, 1939, as a woodsman in Cherry Grove Township, Warren County, Pa., at which time defendant legally rejected the provisions of The Workmen's Compensation Act of June 2, 1915, P. L. 736. This woods contract was finished and claimant ceased working on this job on or about the 15th day of March, 1940, because there was no more work.

Again in October of 1940 claimant went to work for

defendant on another logging job in McKean County, Pa. He continued on this job until February 18, 1941, at which time he was injured while in the course of his employment. For this hiring, defendant did not again reject the provisions of The Workmen's Compensation Act. A petition was filed for compensation by the claimant, which was allowed by the referee and the board.

Defendant takes the position that the employment of claimant did not cease, although he was laid off, when the Cherry Grove job was finished. Defendant further contends that when claimant was injured February 18, 1941, he was still in the employ of defendant under the original hiring, and the first rejection of the act covered claimant on the McKean County job.

The Workmen's Compensation Board held that as the hiring was for an indefinite period it was terminable at will, and, therefore, when claimant quit work on the Cherry Grove job, he was instantly no longer an employe of defendant. Therefore, when he was re-hired in the fall of 1940, there was a new contract of employment which would require a new rejection of the act. The board said on page three of the opinion:

"Therefore, the defendant Company had the right to terminate its contract of employment with the claimant at any time it desired to do so, and it was under no obligation to rehire the claimant in the future."

This court agrees with the result of the decision of the board, but does not agree with the reasons therefor. The line of cases holding that an indefinite hiring is terminable at will is, of course, well recognized. But, where in this record did the employer permanently discharge claimant, or where in this record did the claimant permanently quit his employment, so that there resulted an instantaneous termination of the contract of employment? Mr. Young, president of the defendant company, testified as follows:

"Q. Was he laid off during this period?

A. Just got through was all. He wasn't discharged or anything, just got through."

Mr. Borg, claimant, testified as follows:

"A. Mr. George Bloom, the boss.

Q. Your foreman?

A. Yes.

Q. He said you were laid off, no more work?

A. Yes.

Q. Did he say when you would be called back or anything?

A. No.

Q. Just said, laid off, no more work?

A. Until further notice. We might have some more work."

It appears from this testimony that the work on this Cherry Grove job was finished and there was no definite exercise of a will to terminate the contract of employment at any given instant.

Another line of cases which does not appear to have been cited by the board or by counsel, in the opinion of this court, rules the present case. The proposition is well stated by Judge Hirt in the case of Butera v. Western Ice & Utilities Co. et al., 140 Pa. Superior Ct. 329, 332 (1940):

"The controlling question, therefore, is narrowed to this: Is there substantial evidence, sufficient to sustain the conclusion that there was a continuing agreement to serve defendant corporation, with a fair prospect of additional employment for a reasonable period in the future after the completion of the work under the original hiring?" In that case the claimant said there was a promise of some "little work . . . up in Waynesburg."

While the question there came up on the question of casual employment, the same field of inquiry was before the court, which held that there was no relationship of master and servant under such testimony. In the case at bar, claimant said:

"Q. Did he say when you would be called back or anything?

A. No.

Q. Just said, laid off, no more work?

A. Until further notice. We might have some more work."

The court is of the opinion that the case at bar falls within the Butera v. Western Ice & Utilities case, supra, and that the present situation, in which claimant himself said that "We might have some more work", brings it within the principles of that case.

The case at bar is further strengthened by the fact that claimant went to work for other employers after being laid off by defendant. In fact the work for Mr. Fairweather was the same type of work as that which claimant was doing for defendant. The court is not unmindful of cases holding that concurrent work does not necessarily break the relationship of master and servant. However, taking all the facts of the case into consideration, the court must answer the pertinent question of Judge Hirt, above cited, in the negative.

If the present case had been one where there was a lay-off, because of a breakdown of the machinery, or bad weather conditions, or conditions recurrent in the Cherry Grove job, then this case might be ruled by such situations as found in the case of Treski v. Glen Alden Coal Co., 126 Pa. Superior Ct. 346 (1937), where the Superior Court said (p. 349) :

"We agree with the court below that 'we cannot conclude as a matter of law that the shutdown of the mine on April 1, 1932, automatically terminated the relationship of master and servant between plaintiff and defendant. Periodical shutdowns are common in the anthracite mining industry, and while, of course, employes during such periods are not on a pay status, they are, nevertheless, subject to recall to work and must report when the whistle blows or suffer the chance of dismissal'."

There is the additional feature that when claimant went to work for defendant in the fall of 1940 he was required to sign a reinstatement application for the liability insurance carried by defendant. Such a requirement would tend to show that defendant itself considered the hiring, under which claimant was injured, a new contract of employment.

The board as well as this court was aided in reaching the conclusion that there should have been a new rejection of the act in the fall of 1940, by the provisions of article III, sec. 302(a), of The Workmen's Compensation Act of June 2, 1915, P. L. 736, which reads in part as follows: ". . . and in every contract of hiring renewed or extended by mutual consent, expressed or implied, after said date, it shall be conclusively presumed that the parties have accepted the provisions . . . of this act . . ."

This court is therefore of the opinion that claimant, Gust W. Borg, was in the employ of defendant, the Commercial Lumber Company, and in the scope of his employment and on the company's business, when he was injured February 18, 1941, and that the provisions of The Workmen's Compensation Act had not been legally rejected. The usual schedules of compensation applied, as found by the referee and the Workmen's Compensation Board.

### Order

And now, to wit, November 3, 1942, this court hereby affirms the order of the Workmen's Compensation Board, dated July 17, 1942, in which the findings of the referee were affirmed. In affirming the referee and the board, this court has based its conclusions on the law as stated in this opinion.

November 3, 1942, judgment is entered in favor of above plaintiff and against the Commercial Lumber Company, defendant, for $643.60 (being compensation awarded by the referee for a period of 22 3/7 weeks from February 25, 1941, to August 1, 1941, at the

rate of $10.46 per week, being 66 2/3 percent of $15.69, amounting to $234.60, with costs of medical service, etc., of Dr. John L. Morrison, $150.00, and hospital service of Kane Community Hospital in the amount of $259.00) with interest on deferred payments in accordance with section 410 of The Workmen's Compensation Act, as per award of the referee and order of court filed.